FILED
97 SEP 11 AM 11: 25
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
SEP 1 1 1997

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In the matter of:           }
                            }
BROWNLEE ADAMS and JUDY     }   BANKRUPTCY COURT NUMBER:
HEMPHILL,                   }   96-06751-13
                            }
     Debtors                }
                            }   DISTRICT COURT NUMBER:
BROWNLEE ADAMS and JUDY     }   CV-97-AR-1139-S
HEMPHILL,                   }
                            }
     Appellants,

     vs.

OCWEN FEDERAL BANK, FSB,

     Appellee,

## MEMORANDUM OPINION

Appellee Ocwen Federal Bank ("Ocwen") is the lien holder on the principal residence owned by debtors Brownlee Adams and Judy Hemphill ("Debtors"). When debtors filed for bankruptcy protection but failed to remit a single post-petition mortgage payment, Ocwen sought relief from the automatic stay imposed pursuant to § 362 of the Bankruptcy Code. 11 U.S.C. § 362 (1993). The bankruptcy court granted Ocwen relief from the stay based on "cause," after considering evidence of post-petition default and an earlier bankruptcy default by debtors. Ocwen's failure to introduce evidence of the amount of debtors' equity in their residence was not fatal because Ocwen had made out a prima facie case based upon "cause," reasoned the bankruptcy court. This

court agrees and holds that the bankruptcy court did not abuse its discretion when it granted Ocwen relief from the stay.

Further, this court notes that debtors failed to raise the issue of post-petition cure below. Therefore, that issue is not properly before this court. However, the bankruptcy court's factual findings indicate that debtors would not have been able to satisfy the criteria for cure pursuant to 11 U.S.C. § 1322(b)(5) of the Bankruptcy Code and <u>In re Hoggle</u>, 12 F.3d 1008 (11th Cir. 1994).

### Facts[1]

Brownlee Adams and his spouse, Judy Hemphill, commenced the present bankruptcy case on September 25, 1996, when they filed a voluntary Chapter 13 bankruptcy petition. That petition created an automatic stay against foreclosures based on pre-petition claims. As a part of their bankruptcy payment plan, debtors agreed to make mortgage payments on their principal residence directly to the mortgagee, The Department of Housing and Urban Development ("HUD"). At some point prior to the petition, however, HUD assigned its note and mortgage to Ocwen Federal Bank

---

[1] All of the bankruptcy court's findings of fact are supported by the record. <u>See</u> 11 U.S.C. § 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous....").

2

("Ocwen"). In response to the bankruptcy petition, on December 5, 1996, Ocwen filed a proof of claim in the amount of $16,753.07 for thirty-two missed mortgage payments.

In addition to their present request for bankruptcy protection, debtors had previously filed a voluntary Chapter 13 petition on March 24, 1995. After debtors substantially defaulted on their payment obligations under the first bankruptcy repayment plan, the bankruptcy court dismissed their first case. Five months later, debtors filed the present bankruptcy petition, and six months thereafter, on February 27, 1997, Ocwen moved for relief from the automatic stay; debtors had failed to remit a single post-petition mortgage payment. Debtors responded by requesting an amendment to their present bankruptcy plan to include the missed post-petition payments totaling $2,466.00.

On March 15, 1997, the bankruptcy court held a hearing on Ocwen's motion for relief from the stay. The court issued an order granting relief from the stay, after considering the documentary evidence and debtor's own testimony. Debtors testified that they had not made the post-petition payments because they had not received a payment book or statement and that their attempts to contact HUD, regarding payment information, had gone unanswered; however, debtors could not

3

prove that they had made such contact with HUD. Debtors further testified they were unaware that HUD had assigned the loan to Ocwen. In response, however, Ocwen testified that counsel for debtors was aware of the loan assignment at least five months prior to the present bankruptcy action. Finally, debtors testified that Brownlee Adams's social security disability payments and Judy Hemphill's ("Hemphill") salary were insufficient to meet their living expenses, bankruptcy plan payment and mortgage payment. While Hemphill has received a small pay increase, since they filed the present bankruptcy petition, she testified that she would have to try to secure a part-time job, to supplement the income from her full-time job, in order to meet all of their financial obligations.

After testifying, debtors requested a directed verdict arguing that Ocwen had not met its burden of proving the amount of debtors' equity in the property. Because it had not proven debtors' equity, Ocwen had not shown it was inadequately protected under the stay, argued debtors. Conversely, asserted debtors, they had proven there was sufficient equity in the property to protect Ocwen's interests and therefore Ocwen was not entitled to relief from the stay.

After considering the evidence, the bankruptcy court granted

Ocwen's motion to lift the stay. Debtors' substantial default on their post-petition mortgage payments, along with evidence indicating that debtors would, at best, "have difficulty" meeting all of their payment obligations provided sufficient "cause" upon which to justify lifting the stay, held the court. Further, the court took judicial notice of debtors' substantial default in their first bankruptcy case, which was ultimately dismissed for non-payment. Indeed, noted the court, there was evidence that the debtors had failed to remit approximately forty-six out of forty-eight mortgage payments, during the four years preceding the March 1997 hearing.

On March 28, 1997, debtors filed a motion requesting reconsideration of the bankruptcy judge's order and the court reconsidered the matter at a hearing held on April 8, 1997. During that hearing, debtors again argued that Ocwen had failed to meet is burden of proof on debtors' equity in the mortgaged property. Nonetheless, the bankruptcy court affirmed its earlier ruling and noted that its decision was _not_ based on whether the equity in the property was sufficient to protect Ocwen's interests, but instead on Ocwen's showing of "cause." Further, held the court, the documentary evidence and debtors' own testimony were sufficient to establish a prima facie case for "cause." Accordingly, Ocwen's failure to introduce evidence on

5

the issue of debtors' equity did not bar relief.

In response to the court's reasoning, debtors complained that the bankruptcy court had over calculated the extent of their default under the first bankruptcy plan. Thus their default in the prior case had not been as extensive as the court had believed. With the mortgagee's agreement, the debtors had made reduced mortgage payments to HUD, they argued. The court responded by noting that debtors had failed to produce evidence to support this assertion. To the contrary, explained the court, the evidence before the court showed: 1) a "substantial" unpaid balance existing upon dismissal of the first bankruptcy case, 2) a short period of time between that dismissal and the filing of the present case, 3) an absence of payments, both pre-petition and post-petition, in the present bankruptcy case, and 4) an apparent inability to pay in the present case. All these factors supported a finding of "cause"; therefore the court affirmed its order lifting the stay. Debtors appealed this decision on April 11, 1997.

On appeal debtors argue, for the third time, that they have proved there is enough equity in the property to protect Ocwen's interests and consequently Ocwen's failure to produce evidence to the contrary was fatal to a demand for relief, based upon cause.

In addition, debtors argue, for the first time on appeal, that they are entitled to cure their post-petition default, pursuant to Eleventh Circuit Court of Appeals precedent.

## Discussion

### I. Standard of Review

This court must accept the bankruptcy court's findings of fact, unless they are clearly erroneous. <u>Federal Landbank of Jackson v. Cornelison</u>, 901 F.2d 1073, 1075 (11th Cir. 1990); 11 U.S.C. § 8013 (1993). "A decision to lift [a] stay is discretionary with the bankruptcy judge, and may be reversed only upon a showing of abuse of discretion." <u>In re Dixie Broadcasting</u>, 871 F.2d 1023, 1026 (11th Cir. 1989).

### II. Analysis

When a debtor files a bankruptcy petition, § 362 of the Bankruptcy Code provides for an automatic stay against "litigation, lien enforcement, and other actions, judicial or otherwise, that are attempts to enforce or collect pre-petition claims." 3 Collier On Bankruptcy, ¶ 362.01 (15th ed. 1987); 11 U.S.C. § 362. However, after notice and a hearing, there are several bases upon which a creditor may seek relief from the

automatic away.² First the creditor may seek relief from the stay upon a showing of "cause." § 362(d)(1). The Bankruptcy Code does not define the term "cause," however. Instead, the term was "intentionally [left] broad and flexible [to allow] the Bankruptcy Court, as a court of equity to respond to inherently fact-sensitive situations." In re Texas State Optical, Inc., 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995) (citation omitted). See In re South Oakes Furniture, 167 B.R. 307, 308 (Bank. M.D. Ga. 1994) (citing In re McDonald, 755 F.2d 715, 717 (9th Cir. 1985)).

Many courts have held that a debtor's failure to make post-petition payments constitutes sufficient "cause" to justify relief from an automatic stay. In re Williams, 68 B.R. 442, 443 (Bank. M.D. Ga. 1987) (citing In re Ellis, 60 B.R. 432, 435 (9th Cir. 1985)); In re Heath, 79 B.R. 616, 619 (Bank. E.D. Pa 1987) (noting that post-petition default is "one of the most common

---

² "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

    (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
    (2) with respect to a stay of an act against property under subsection (a) of this section, if--
        (A) the debtor does not have equity in such property; and
        (B) such property is not necessary to an effective reorganization; or
    (3) with respect to a stay of an act against single asset real estate...." 11 U.S.C. § 362(d) (emphasis added).

examples of 'cause'"); In re Hinkle, 14 B.R. 202, 203 - 4 (Bankr. E.D. Pa 1981); In re Pelzer, 15 B.R. 73, 74 (Bankr. E.D. Pa. 1981). See In re Stafford, 123 B.R. 415, 422 (N.D. Ala. 1991); In re Southerland, 173 B.R. 432, 433 (M.D. Fla. 1994). On the other hand, some courts have limited application of this post-petition default rule by holding that such defaults alone are insufficient to constitute "cause." In re Raymond, 99 B.R. 819, 822 (Bankr. S.D. Ohio 1989); In re Rice, 82 B.R. 623, 627 (Bank. S.D. Ga. 1987)("Generally some debtor misconduct has been required before the stay will be lifted for non-payment"). More importantly, pursuant to Bankruptcy Code § 1322(b)(5), the Eleventh Circuit has limited the post-petition default rule. The court has held that, "under appropriate circumstances," a debtor may be allowed to cure post-petition mortgage defaults where the secured property is the debtor's primary residence. In re Hoggle, 12 F.3d 1008, 1011 - 12 (11th Cir. 1994). Cure is only appropriate, however, if the debtor can do so within a reasonable period of time and simultaneously remit current mortgage payments. § 1322(b)(5); In re Hoggle, 12 F.3d at 1012.

In addition to post-petition default, a creditor may also seek relief from a stay by showing that its financial interests are not "adequately protected." In re Williams, 68 B.R. at 443 (citing In re Ellis, 60 B.R. at 435); Collier ¶ 362.07[3].

9

Adequate protection is the sole example of "cause" explicitly enumerated in the code. § 362(d). One method by which a creditor may show inadequate protection, as a basis for "cause," is to prove there is an insufficient "equity cushion" in the property. In re Mathews, 208 B.R. 506, 510 - 11 & n.6 (Bankr. N.D. Ala. 1997); In re Thomas, 121 B.R. 94, 108 - 09 (Bankr. N.D. Ala. 1990); In re Heath, 79 B.R. at 618; In re Rice, 82 B.R. at 627; In re Pelzer, 15 B.R. at 75. In other words, "when the debts secured by liens on the property exceed the value of the property," Collier ¶ 362.07[4], there is an insufficient equity cushion and the creditor has "cause" to obtain relief from a stay based upon "lack of adequate protection." See In re Pelzer, 15 B.R. at 75.

When seeking relief from a stay based upon "cause," the moving party has the burden of proving the debtors' equity in the property. § 362(g). First, however, the moving party must make an initial showing of "'cause' for relief before any burden attaches to the debtor." In re Heath, 79 B.R. at 617; In re Raymond, 99 B.R. at 820. (citations omitted). Once the moving party makes out this prima facie case, the non-moving party bears the burden of proving "all" issues, except the debtor's equity. § 362(g).

### A. Relief From The Stay

On appeal, debtors continue to challenge the bankruptcy court's decision to lift the automatic stay, by arguing that Ocwen did not meet its burden of proof under § 362. Debtors point out that evidence of a sufficient equity cushion can defeat a showing of cause, premised upon lack of adequate protection. Debtors argue that their evidence showed a sufficient equity cushion and therefore Ocwen's failure to rebut this evidence means that Ocwen has failed to show inadequate protection under the stay. "A creditor cannot obtain relief from stay [sic] with no evidence whatever, and with only unsupported allegations," the debtors remind this court. (Appellant's brief p. 11).

What debtors seem to ignore, however, is that evidence of post-petition default <u>alone</u> is enough to support a finding of "cause." <u>E.g.</u>, <u>In re Williams</u>, 68 B.R. at 42; <u>In re Heath</u>, 79 B.R. at 696. It is true that some courts refuse to lift an automatic stay based solely upon post-petition default. <u>In re Raymond</u>, 99 B.R. at 822; <u>In re Rice</u>, 82 B.R. at 62. In the present case, however, there is compelling evidence, in addition to post-petition default, that supports the bankruptcy court's finding of "cause." Documentary evidence and debtors' own testimonial evidence, show a prior bankruptcy petition that was dismissed for non-payment and this present bankruptcy petition

11

filed only five months after dismissal of the first petition. "[C]reditors are entitled to rely upon the debtors' responsibilities to make their post-confirmation payments. The debtors are not required to remain in Chapter 13 if they cannot satisfy the obligations which they proposed as feasible and which they voluntarily assumed." In re Williams, 68 B.R. at 443 (citations omitted).

Once Ocwen established a prima facie showing of cause under § 362(d)(1), it was under no duty to also prove the debtors' equity in the property. Id.; See In re Pelzer, 15 B.R. at 75. Accordingly, Ocwen's failure to produce evidence regarding debtors' lack of sufficient equity is not fatal in the present case. While some bankruptcy courts have refused to grant relief from a stay, for "cause," where the creditor is "adequately protected" by a sufficient "equity cushion," In re Mathews, 208 B.R. at n.6 (citing numerous cases), adequate protection "does not necessarily defeat a request for relief from the stay 'for cause'...." In re Pelzer, 15 B.R. at 75; In re Williams, 68 B.R. at 443. Cause is a "broad and flexible" term, In re Texas State Optical, 188 B.R. at 556, which allows the bankruptcy court to fashion appropriate relief, whether or not an equity cushion exists. Thus even where the debtors provide evidence of a sufficient equity cushion, as debtors here claim

12

they have done, a creditor can obtain relief based upon a showing of "cause," without producing evidence of debtor's equity. What good is a lien on "equity" when there are no payments being made on the mortgaged house, a house that would probably rent for as much as, or more than, the mortgage payments?

### B. Cure of Post-Petition Mortgage Default

Finally, debtors argue that even if Ocwen has shown cause to support relief from the stay, In re Hoggle, an Eleventh Circuit decision, authorizes cure of their post-petition mortgage default, thereby precluding relief from the stay. See In re Hoggle, 12 F.3d 1008. This issue is not properly before this court, however, because debtors failed to raise this argument below. Nonetheless, had debtors raised the argument below, the bankruptcy court's findings of fact show that debtors do not meet the criteria established for cure pursuant to § 1322(b)(5) and In re Hoggle. Debtors here have proven themselves incapable of curing their default. There must be an end to the agony.

The Eleventh Circuit, in In re Hoggle, held that § 1322(b)(5) allows a debtor to "cure a post-confirmation default with reference to a secured claim on the debtor's house." 12 F.3d at 1009; §§ 1322(b)(5), 1329. After reviewing the legislative history, of § 1322(b)(5), the Eleventh Circuit

13

concluded that, "under appropriate circumstances," Congress intended "to permit homeowners to utilize [the] flexible provisions [of the Bankruptcy code] for debt relief without sacrificing their own homes."  In re Hoggle, 12 F.3d at 1010 - 11 (citations to the Congressional Record omitted).  Pursuant to § 1322(b)(5), those  "appropriate circumstances," require that the debtor cure the default "within a reasonable time and simultaneously maintain payments on the long term loan."  Id. at 1012 (emphasis added).

While the debtors in the present case have requested amendment of their present bankruptcy payment plan to include the post-petition default, there is nothing in the record that suggests, much less proves, that debtors will be able to cure the default within a reasonable period of time and simultaneously remit their current mortgage payments.  Debtors testified that their present income will not cover their bankruptcy plan and mortgage payments, in the presently established amount. Moreover, the bankruptcy court found that, "at best," debtors will have difficulty meeting meet these obligations in the future.

As the Eleventh Circuit opined, in In re Hoggle, "Congress designed [the cure provision] to permit modification of a plan

14

due to changed circumstances of the debtor unforeseen at the time of confirmation." Id. at 1011 (citations to the Congressional Record omitted). Yet, based upon the criteria for cure, it appears Congress anticipated that debtors would also undergo some rapid improvement in their circumstances. Otherwise, there would be no way for the bankruptcy court to ensure debtors can repay the default within a reasonable time, while keeping their mortgage payments current. See § 1322(b)(5). However, there is nothing in the record indicating that the debtors in this case have experienced a change in circumstances, since confirmation of their second bankruptcy plan, that would sufficiently explain their missed payments. Debtors' only excuse for this post-petition default, is that they did not know where to make the payments. Even if debtors were able to sufficiently explain the default, there is nothing in the record that suggests an improvement in their financial circumstances sufficient to assuage the bankruptcy's courts doubts regarding debtors' ability to maintain their bankruptcy obligations. Indeed, rather than any change in circumstances, debtors have demonstrated a consistent history of non-payment.

The facts surrounding the present case, are in sharp contrast to the facts in In re Mathews, a bankruptcy case decided within the Eleventh Circuit, pursuant to In re Hoggle. 208 B.R.

506. The debtor in <u>Mathews</u> had never missed a mortgage payment until he defaulted on only two post-petition payments. This two month default occurred after the debtor's spouse left her job in search of other employment. However, within four months of leaving the job, debtor's spouse obtained another job at a higher salary. After considering the debtor's financial situation, "mortgage payment history, the age of the existing mortgage, and the number of prior bankruptcy cases," the bankruptcy court allowed the debtor to cure his post-petition default.

> If this debtor's post-petition mortgage default is not one that qualifies for [cure] pursuant to <u>In re Hoggle</u>, there are none that do. This debtor filed his bankruptcy case at least one year before he failed to make the two mortgage payments....<u>This debtor's case does not exhibit any of the indicia of a failing Chapter 13 case</u>.

<u>In re Mathews</u>, 208 B.R. at 512 (emphasis added).

Unfortunately, the facts in the present case, including the "mortgage payment history" and the "number of prior bankruptcy" petitions do "exhibit the indicia of a failing Chapter 13 case." Therefore, had debtors raised the § 1322 cure argument below, their argument would not have successfully provided refuge.

### Conclusion

The bankruptcy court below found that the documentary evidence and debtor's testimony, in the present case, were

sufficient to justify relief from the stay for "cause." Upon making out a prima facie case for cause, Ocwen was under no obligation to also prove the debtor's equity in the property, held the bankruptcy court. Given the evidence in this case, this Court holds that the bankruptcy court decision was not an abuse of discretion. It might have been an abuse of discretion to rule otherwise. In addition, this court notes that the evidence would not have supported a request for post-petition default under § 1322(b)(5).

Sad as it may be, the debtors are no longer entitled to the protection of the bankruptcy court.

DONE this 11th day of September, 1997.

/s/ William M. Acker
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE